UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID E. BELMAN, | ) | Case No. SA CV 13-1466-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On September 30, 2013, plaintiff David E. Belman filed a complaint against

defendant, the Commissioner of the Social Security Administration

("Commissioner"), seeking a review of a denial of a period of disability and

disability insurance benefits ("DIB").  Both plaintiff and defendant have consented

to proceed for all purposes before the assigned Magistrate Judge pursuant to 28

U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral

argument.

1   Plaintiff presents two disputed issues for decision:  (1) whether the
2   Administrative Law Judge ("ALJ") properly rejected the opinion of examining
3   physician, Dr. James Styner; and (2) whether the ALJ properly considered
4   plaintiff's credibility.  Memorandum in Support of Plaintiff's Complaint ("P.
5   Mem.") at 3-17; Memorandum in Support of Defendant's Answer ("D. Mem.") at
6   2-6.

7   Having carefully studied, inter alia, the parties's moving papers, the
8   Administrative Record ("AR"), and the decision of the ALJ, the court concludes
9   that, as detailed herein, the ALJ improperly rejected a part of the opinion of
10  plaintiff's examining physician without providing specific and legitimate reasons
11  supported by substantial evidence for doing so.  The court therefore remands this
12  matter to the Commissioner in accordance with the principles and instructions
13  enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

16  Plaintiff, who was forty-two years old on his amended alleged disability
17  onset date, attended three years of college and received vocational training as a
18  emergency medical technician and physical therapy assistant.  AR at 53, 64, 95,
19  269.  He has past relevant work as a physical therapist assistant.  *Id.* at 89.

20  On October 26, 2010, plaintiff filed an application for a period of disability
21  and DIB due to a cardiac condition and cervical disc herniation, which was denied
22  initially.  *Id*. at 94, 123-26.

23  On August 9, 2011, plaintiff filed a second application for a period of
24  disability and DIB, again due to cervical disc herniations and a cardiac condition.
25  *Id.* at 95, 203, 268.  The Commissioner denied plaintiff's application initially and
26  upon reconsideration, after which he filed a request for a hearing.  *Id.* at 131-34,
27  137-42, 151-52.

28

1   On October 5, 2012, plaintiff, represented by counsel, appeared and testified

2   at a hearing before the ALJ.  *Id*. at 46-93.  The ALJ also heard testimony from Dr.

3   Arthur Lorber, a medical expert, and Kelly Winn-Boaitey, a vocational expert.  *Id.*

4   at 65-71, 88-92.  On November 9, 2012, the ALJ denied plaintiff's claim for

5   benefits.  *Id*. at 30-40.

6   Applying the well-known five-step sequential evaluation process, the ALJ

7   found, at step one, that plaintiff had not engaged in substantial gainful activity

8   since April 22, 2010, the amended alleged onset date.  *Id.* at 32.

9   At step two, the ALJ found that plaintiff suffered from the following severe

10  impairments:   cervical discogenic disease with history of work-related cervical

11  sprain and disc herniation; and coronary artery disease, status post one-vessel

12  angioplasty.  *Id.*

13  At step three, the ALJ found that plaintiff's impairments, whether

14  individually or in combination, did not meet or medically equal one of the listed

15  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

16  "Listings").  *Id.* at 34.

17  The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

18  determined that plaintiff had the RFC to:  lift/carry twenty pounds occasionally

19  and ten pounds frequently; stand/walk for six hours in an eight-hour workday; sit

20  for six hours in an eight-hour workday; do occasional overhead lifting with both

21  upper extremities; and engage in frequent (but not constant) handling with the

22

23

24          [1]   Residual functional capacity is what a claimant can do despite existing

25  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
    1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
26  evaluation, the ALJ must proceed to an intermediate step in which the ALJ
    assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
27  F.3d 1149, 1151 n.2 (9th Cir. 2007).

28

1  right hand.  *Id.*  In addition, the ALJ precluded plaintiff from:  climbing ladders,
2  ropes, or scaffolds; and concentrated exposure to work with vibrating tools.  *Id.*

3        The ALJ found, at step four, that plaintiff was incapable of performing his
4  past relevant work as a physical therapist assistant.  *Id.* at 39.

5        At step five, the ALJ found that there were jobs that existed in significant
6  numbers in the national economy that plaintiff could perform, including office
7  helper and information clerk.  *Id.* at 39-40.  Consequently, the ALJ concluded that
8  plaintiff did not suffer from a disability as defined by the Social Security Act.  *Id.*
9  at 40.

10        Plaintiff filed a timely request for review of the ALJ's decision, which was
11  denied by the Appeals Council.  *Id.* at 3-5.  The ALJ's decision stands as the final
12  decision of the Commissioner.

### III.

### STANDARD OF REVIEW

15        This court is empowered to review decisions by the Commissioner to deny
16  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
17  Administration must be upheld if they are free of legal error and supported by
18  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
19  (as amended).  But if the court determines that the ALJ's findings are based on
20  legal error or are not supported by substantial evidence in the record, the court
21  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*
22  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
23  1144, 1147 (9th Cir. 2001).

24        "Substantial evidence is more than a mere scintilla, but less than a
25  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
26  "relevant evidence which a reasonable person might accept as adequate to support
27  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

28

1  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

2  finding, the reviewing court must review the administrative record as a whole,

3  "weighing both the evidence that supports and the evidence that detracts from the

4  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

5  affirmed simply by isolating a specific quantum of supporting evidence.'"

6  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

7  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

8  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

9  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

10  1992)).

11  **IV.**

12  **DISCUSSION**

13  **A.**  **The ALJ Failed to Provide Specific and Legitimate Reasons for**

14  **Rejecting the Postural Limitations Opined by an Examining Physician**

15  Plaintiff argues that the ALJ improperly rejected the opinion of an

16  examining physician, Dr. James Styner.  P. Mem. at 3-10.  Specifically, plaintiff

17  contends that the two reasons provided were legally insufficient.

18  In determining whether a claimant has a medically determinable

19  impairment, among the evidence the ALJ considers is medical evidence.  20

20  C.F.R. § 404.1527(b).  In evaluating medical opinions, the regulations distinguish

21  among three types of physicians:  (1) treating physicians; (2) examining

22  physicians; and (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e);

23  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a

24  treating physician's opinion carries more weight than an examining physician's,

25  and an examining physician's opinion carries more weight than a reviewing

26  physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20

27  C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally

28

1  given the greatest weight because the treating physician is employed to cure and

2  has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*,

3  80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

4  Cir. 1989).

5  Nevertheless, the ALJ is not bound by the opinion of the treating physician.

6  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

7  ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

8  81 F.3d at 830.  If the treating physician's opinion is contradicted by other

9  opinions, the ALJ must provide specific and legitimate reasons supported by

10 substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

11 specific and legitimate reasons supported by substantial evidence in rejecting the

12 contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

13 non-examining physician, standing alone, cannot constitute substantial evidence.

14 *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

15 *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

16 813, 818 n.7 (9th Cir. 1993).

17 **1.   Dr. Styner**

18 Dr. Styner, an orthopedist, reviewed plaintiff's medical records and

19 examined plaintiff on September 19, 2012.  AR at 947.  Dr. Styner wrote a

20 summary of his examination and findings (headed Orthopedic Examination), and

21 completed a Cervical Spine Impairment Questionnaire.  *Id*. at 947-71.  During the

22 examination, Dr. Styner observed that plaintiff had reduced range of motion in the

23 rotation of the cervical spine, the flexion and abduction of the shoulders, the

24 flexion and extension of the lumbar spine, the flexion of the knees, the extension

25 and plantar flexion of the right knee, and the forefoot bilaterally.  *See id.* at 952-

26 55.  Dr. Styner also observed:  tenderness at the right paracervical spine

27 musculature and trapezius musculature bilaterally; plica of the knee bilaterally

28

with swelling on the left and tenderness at the medial joint; knee bend limited to 50 percent; and tenderness of the right ankle, Achilles tendon medial and lateral at the insertion. *See id.* Dr. Styner diagnosed plaintiff with chronic myoligamentous strain of the cervical spine with MRI evidence of 5 mm herniated disc at C5-6, chronic myoligamentous strain of the lumbar spine, inflammatory process of the shoulders bilaterally, inflammatory process of the knees bilaterally, and residuals of chronic sprain bilateral ankles. *Id.* at 959.

Based on his examination and review of plaintiff's medical records, Dr. Styner opined that plaintiff had the RFC to lift/carry fifteen pounds occasionally and five pounds frequently, sit four hours in an eight-hour workday with the ability to get up for 10-15 minutes each hour, and stand/walk two to three hours in an eight-hour workday with the ability sit for 15-20 minutes every 30-45 minutes. *Id.* at 961, 968. Dr. Styner precluded plaintiff from: overhead work; heavy lifting/carrying/forceful exertion of the upper extremities; and repetitive or prolonged bending, stooping, squatting, kneeling, climbing or walking over uneven ground. *Id.* at 961, 970-71.

## 2. Other Physicians

*Treating Physicians*

Dr. Michael Weinstein, an orthopedic surgeon, treated plaintiff from October 14, 2009 through at least November 11, 2010. *See id.* at 461, 639. At the initial examination, Dr. Weinstein examined plaintiff and observed a decreased range of motion in the cervical spine with regard to flexion, extension, lateral rotation, and lateral bending. *See id.* at 462-65. On September 10, 2010, Dr. Weinstein examined plaintiff and completed a Orthopaedic Permanent and Stationary Report. *Id.* at 367-69. Dr. Weinstein observed decreased range of motion in the cervical spine, and assessed plaintiff with chronic neck pain and central and left sided C5-6 disc herniation. *Id.* at 367-68. Dr. Weinstein opined

that plaintiff should be restricted from lifting greater than 35 pounds, repetitive lifting greater than 25 pounds, and repetitive overhead work. *Id.* On September 17, 2010, Dr. Weinstein completed a Physical Capacities form, in which he opined that plaintiff could:  stand for four hours a day, up to two hours at one time; sit two hours a day; occasionally lift thirty-five pounds;[2] and could occasionally climb, balance, and reach; but plaintiff could never stoop, kneel, crouch, or crawl. *See id*. at 815-16.

Dr. Afshin Mashoof, an orthopedic surgeon, treated plaintiff from January 31, 2011 through at least May 13, 2011. *See id.* at 629, 865.  Dr. Mashoof examined plaintiff's cervical spine and upper extremities, and reviewed plaintiff's medical records from Hoag Hospital and Dr. Weinstein. *See id.* at 629-33.  Dr. Mashoof opined that plaintiff be restricted from heavy lifting, repetitive motion of the cervical spin, and prolonged posturing of the cervical spine in one position. *Id*. at 632.  On May 13, 2011, Dr. Mashoof submitted a Supplemental Certification and an Orthopedic Reevaluation. *See id*. at 634, 865-67.  In the Supplemental Certification, Dr. Mashoof opined that plaintiff should not lift greater than 35 pounds, should not engage in repetitive lifting of greater than 25 pounds, and should not do repetitive overhead work. *Id.* at 634.  In the Orthopedic Reevaluation, Dr. Mashoof opined that plaintiff should avoid repeated head and neck posturing.[3] *Id* at 866.

---

[2]   Dr. Weinstein checked that plaintiff could occasionally lift thirty-five pounds, but never lift twenty-five pounds.  AR at 816.  Given his consistent opinion that plaintiff could lift up to 35 pounds, including on the same Physical Capacities form, the court assumes his checking of the "never" box under twenty-five pounds was an error.

[3]   Dr. Mashoof also opined that plaintiff should not lift over five pounds.  AR at 866.  Given that Dr. Mashoof opined that plaintiff should lift no more than 35 pounds in other opinions, including one rendered the same day, this court assumes

1    Dr. David L. Wood, an orthopedic surgeon, began treating plaintiff on

2  December 13, 2011.[4]  *See id.* at 926.  Dr. Wood observed that plaintiff had varying

3  degrees of reduced range of motion in the cervical spine.  *See id.* at 906, 916, 921.

4  Based on his exams and review of plaintiff's medical records, Dr. Wood opined

5  that plaintiff be restricted from heavy lifting and repetitive motion of the cervical

6  spine or extremities, and engage in only "limited use" of his upper extremities and

7  "limited duration" of his activities.  *Id.* at 912.

8    *Examining Physicians*

9    Dr. Neil J. Halbridge, an orthopedic surgeon, examined plaintiff on

10  December 21, 2010.  *See id.* at 569-81.  Dr. Halbridge noted that plaintiff had

11  asymmetric limitation of motion of the cervical spine and a herniated disc at the

12  C5-6 level.  *Id.* at 574.  Dr. Halbridge diagnosed plaintiff with herniated, extruded

13  disc syndrome, C5-6, left (5 mm); sleep disturbance; and gastritis secondary to

14  naproxen.  *Id.* at 574.  Dr. Halbridge opined that plaintiff should not push/pull/lift

15  greater than twenty pounds and perform no overhead work.  *Id.* at 575.

16    Dr. John S. Godes, an internist, examined plaintiff on April 20, 2011 and

17  February 10, 2012.  *See id.* at 612, 711.  Dr. Godes also reviewed some of

18  plaintiff's medical records.  *See id.* at 612-13.  During the April 20, 2011 physical

19  examination, Dr. Godes observed that plaintiff had decreased range of motion in

20  his neck, but otherwise normal range of motion elsewhere.  *See id.* at 614-19.  Dr.

21  Godes observed no tenderness or swelling.  *See id.*  At the February 10, 2012

22  examination, Dr. Godes observed tenderness of the lower cervical spine and

23  paravertebral and trapezius areas, bilaterally, as well as decreased range of motion

24  in the neck.  *Id.* at 713.  Dr. Godes diagnosed plaintiff with cervical discogenic

25  disease, post traumatic pain in the right wrist, and coronary artery disease, status

26

27  the five-pound limitation was a typographical error.

28    [4]   The ALJ failed to discuss Dr. Wood's opined limitations.

post 1-vessel angioplasty. *Id.* at 715.  Dr. Godes opined that plaintiff could lift

twenty pounds occasionally and ten pounds frequently, could stand/walk/sit for six

hours in an eight-hour workday, and had no other limitations.  *Id.* at 716.

*Non-Examining Physicians*

Dr. A. Lizarraras, a State Agency physician, reviewed some of plaintiff's

medical records on May 2, 2011.  *See id.* at 625-27.  Dr. Lizarraras opined that

plaintiff: could lift/carry twenty pounds occasionally and ten pounds frequently;

stand/walk/sit six hours in an eight-hour workday; and had no other limitations.

*See id.* at 620-24.

Dr. Arthur Lorber, a medical expert and orthopedic surgeon, reviewed

plaintiff's medical records and questioned plaintiff at the hearing.  *See id.* at 55-

65, 195.  Dr. Lorber opined that plaintiff had the RFC to lift twenty pounds

occasionally and ten pounds frequently, stand/walk/sit six hours a day with normal

breaks, and perform occasional overhead work with upper extremities.  *Id.* at 69.

Dr. Lorber further opined that plaintiff be precluded from climbing ladders, ropes,

or scaffolds; exposure to concentrated vibration; and constant pushing, pulling, or

handling of the right hand.  *Id.* at 70.

### 3.  <u>The ALJ's Findings</u>

The ALJ concluded that plaintiff had the RFC to:  lift/carry twenty pounds

occasionally and ten pounds frequently; stand/walk six hours and sit six hours in

an eight-hour workday; perform occasional overhead lifting with both upper

extremities; and do frequent, not constant, handling with the right hand.  *Id.* at 34.

The ALJ further opined that plaintiff could never climb ladders, ropes, or scaffolds

and must avoid concentrated exposure to work with vibrating tools.  *Id.*  In

reaching that determination, the ALJ gave great weight to the opinions of Dr.

Lorber, Dr. Godes, and Dr. Lizarraras.  *Id.* at 38.  The ALJ gave some weight to

Dr. Halbridge's opinion, less weight to Dr. Weinstein's and Dr. Mashoof's

1   opinions, and little weight to Dr. Styner's opinion. *Id*. The ALJ discounted Dr.

2   Styner's opinion on the bases that it was based on a one-time examination and

3   inconsistent with the record as a whole. *Id*. The ALJ's reasons for rejecting Dr.

4   Styner's opinion were, in part, not specific and legitimate and supported by

5   substantial evidence. *See Lester*, 81 F.3d at 830.

6         The first reason cited by the ALJ – that Dr. Styner only examined plaintiff

7   on one occasion – was not specific or legitimate. The regulations clearly state that

8   an ALJ must consider the opinions of treating, examining, and State Agency

9   physicians. *See* 20 C.F.R. § 494.1527(c), (e); *Lester*, 81 F.3d at 830. The fact that

10  a physician only examined a claimant on one occasion is not a specific and

11  legitimate reason to reject the opinion, but rather is a factor that can be considered

12  in assigning weight.

13        Here, the ALJ's reason was a pretense. The ALJ stated that Dr. Styner's

14  opinion should be given little weight because he only examined plaintiff on one

15  occasion. But the ALJ gave great weight to the opinions of Dr. Lorber, Dr. Godes,

16  and Dr. Lizarraras, none of whom were treating physicians. Indeed, Dr. Lorber

17  and Dr. Lizarraras did not even examine plaintiff, and Dr. Godes only examined

18  plaintiff twice. Based on the ALJ's reason for rejecting Dr. Styner's opinion, the

19  ALJ also should have not have given great weight to Dr. Lorber's, Dr. Godes's,

20  and Dr. Lizarraras's opinions, as she did.

21        The second reason cited by the ALJ was similarly not specific and

22  legitimate, in part. Although inconsistency with the record may be a specific and

23  legitimate reason for rejecting a physician's opinion, here it was not as to the

24  postural limitations opined by Dr. Styner. *See Batson v. Comm'r*, 359 F.3d 1190,

25  1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that

26  are "unsupported by the record as a whole . . . or by objective medical findings");

27

28

1  *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (the ALJ must

2  identify the conflicting evidence and set out his reasoning).

3      Here, the medical record contains objective evidence that is consistent with

4  Dr. Styner's opinion concerning plaintiff's impairments and can support the

5  opined limitations.  First, the medical evidence clearly reflects that plaintiff had

6  disc protrusions.  An April 14, 2010 MRI showed a disc protrusion measuring 5

7  mm at the C5-C6 level and a 2 mm central disc protrusion at the C6-C7 level.  AR

8  at 412.  Second, the medical record shows that plaintiff consistently had a limited

9  range of motion in his cervical spine.  *See, e.g.*, *id*. at 391, 419, 458, 614.  Finally,

10  the physical therapy records show that plaintiff experienced a slight exacerbation

11  of symptoms when he moved from a sit to stand position while holding 15-pound

12  dumbbells in each hand and experienced neck tension from driving for six hours.[5]

13  *Id.* at 803-04, 806.  The objective evidence can support Dr. Styner's standing,

14  sitting, walking, lifting, overheard reaching, and postural limitations.

15      Nonetheless, the objective medical evidence is subject to interpretation and

16  may also support the opinions of the other physicians in this case.  When the

17  evidence is susceptible to more than one interpretation the ALJ must resolve the

18  conflicts, and the court will uphold the ALJ's finding so long as it is supported by

19  substantial evidence.  *See Tommasetti v. Astrue*, 535 F.3d 1035, 1041-42 (9th Cir.

20  2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the

21  medical evidence").  Because the evidence with regard to lifting, carrying, sitting,

22  standing, and walking may reasonably support Dr. Lorber's, Dr. Godes's, and Dr.

23

24

25      [5]   Plaintiff's condition appeared to improve with physical therapy.  *See, e.g.*,

26  803-06.  At his last authorized treatment, plaintiff stated that he wanted increase
his lifting poundages in order to prepare to return to work.  *See id*. at 806.  From

27  the record, it did not appear that plaintiff received authorization for further

28  physical therapy.

1   Lizarraras's opinions, the court will not substitute its judgment concerning those

2   limitations.

3         But the ALJ's rejection of Dr. Styner's postural limitations and reliance on

4   Dr. Godes's, Dr.  Lizarraras's, and Dr. Lorber's opinions that plaintiff did not

5   require postural limitations was not reasonable.  The evidence clearly reflects that

6   plaintiff had chronic neck pain and limited range of motion.  Dr. Godes noted that

7   plaintiff suffered from neck pain and observed that plaintiff had significant

8   reduced range of motion in his neck, but did not opine any postural limitations.

9   AR at 612, 614, 713.  Similarly, both Dr. Lorber and Dr. Lizarraras acknowledged

10  plaintiff's history of neck pain and reduced range of motion but did not opine

11  limitations.  Dr. Lorber testified that Dr. Wood found that plaintiff had a full range

12  of motion in his neck at his January 10, 2012 visit, but that was not accurate.  *See*

13  AR at 68.  Although close to normal, plaintiff still experienced a decreased range

14  of motion in the forward flexion.  *Id*. at 921.  Moreover, Dr. Lorber disregarded or

15  did not notice the fact that plaintiff again experienced decreased range of motion

16  in the lateral rotation of his cervical spine after the January 2012 examination.  *See*

17  *id.* at 952.  Dr. Godes's, Dr. Lorber's, and Dr. Lizarraras's opinions are therefore

18  inconsistent with the objective medical evidence, which supports postural

19  limitations.

20        The court also notes that the ALJ rejected Dr. Weinstein's opined postural

21  limitations on the same ground, which as discussed above, is not supported by

22  substantial evidence.  *See* AR at 38.  In addition, the ALJ failed to discuss the fact

23  that Dr. Dr. Mashoof also opined similar postural limitations.  *See* AR at 871.

24  This was error.  Indeed, three orthopedic specialists viewed the same evidence and

25  opined that plaintiff required postural limitations.  The ALJ did not appear to give

26  the specialists more weight, and instead gave their opinions less weight than those

27  of internist Dr. Godes, to the extent she acknowledged them.  *See Reed v.*

28  *Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (noting that the agency generally

gives more weight to specialists than to the opinion of a medical source who is not a specialist).  These additional opinions further show that the ALJ's determination that Dr. Styner's opinion concerning plaintiff's postural limitations was inconsistent with the medical evidence was not supported by substantial evidence.

In sum, the ALJ cited one specific and legitimate reason for rejecting Dr. Styner's opinion concerning plaintiff's limitations relating to lifting, carrying, sitting, standing, walking, and overhead work.  But the ALJ failed to cite specific and legitimate reasons supported by substantial evidence for rejecting the portion of Dr. Styner's opinion concerning postural limitations.  Accordingly, the ALJ erred in discounting that portion of Dr. Styner's opinion.

**B.    The ALJ Erred in Part in Discounting Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to make a proper credibility determination.  P. Mem. at 10-17.  Specifically, plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his credibility. *Id.*

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[6]  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

---

[6]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1203 n.1 (internal citations omitted).

malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a claimant's credibility, including:  (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged.  AR at 37.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.   Here, the ALJ discounted plaintiff's credibility because: (1) plaintiff received conservative care; and (2) his daily activities were inconsistent with the alleged functional limitations.  *Id.* at 37-38.

The ALJ's first ground for an adverse credibility finding was that plaintiff received conservative treatment and his symptoms were managed by medications. *Id.* at 37; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").  The evidence supports the ALJ's determination that plaintiff received and improved with conservative treatment.  Although Dr. Weinstein and Dr. Haldridge contemplated the possibility of future surgical treatment and Dr. Mashoof recommended epidural steroid injections, plaintiff did not receive these treatments.  *See* AR at 574, 632.  Instead, the treating physicians treated plaintiff with physical therapy, chiropractic care, massages, and medication.  *See, e.g., id.* at 368, 465, 803-06.  Treatment with pain medication, physical therapy, and chiropractic care is generally viewed as conservative.  *See, e.g., Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that

15

1    plaintiff responded favorably to conservative treatment, which included "the use

2    of narcotic/opiate pain medications); *Tommasetti*, 533 F.3d at 1040 (characterizing

3    physical therapy as conservative); *Lane v. Colvin*, 2013 WL 3449631, at *2 (C.D.

4    Cal. Jul. 9, 2013) (chiropractic treatment is conservative).  The court recognizes

5    that plaintiff's medications included hydrocodone, which is often not

6    characterized as conservative.  *See Lasane v. Colvin*, 2013 WL 3121315, at *4

7    (C.D. Cal. Jun. 19, 2013); *see also Abbott v. Astrue*, 391 F. App'x 554, 560 (7th

8    Cir. 2010) (characterizing hydrocodone as a "strong pain reliever").  But the ALJ

9    correctly noted that plaintiff took hydrocodone only occasionally.  AR at 37, 378.

10       The ALJ cited plaintiff's daily activities as a second reason for finding him

11   less credible.  *Id*. at 37.  Specifically, the ALJ noted that plaintiff engaged in a

12   "somewhat normal level of daily activity and interaction," including personal care,

13   pet care, cooking, cleaning, laundry, paying bills, watching television, driving, and

14   shopping.  *Id.*  The ALJ found some of the physical and mental abilities required

15   to perform his daily activities were "the same as those necessary for obtaining and

16   maintaining employment."  *Id.*  But "the mere fact a [claimant] has carried on

17   certain daily activities, such as grocery shopping, driving a car, or limited walking

18   for exercise, does not in any way detract from [his] credibility as to [his] overall

19   disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant

20   does not need to be "utterly incapacitated."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th

21   Cir. 1989).  While a plaintiff's ability "to spend a substantial part of his day

22   engage in pursuits involving the performance of physical functions that are

23   transferable to a work setting" may be sufficient to discredit him, here, there is no

24   evidence that plaintiff was spending a substantial part of his day engaging in his

25   listed daily activities or that the physical demands of his daily activities were

26   transferable.  *See Morgan*, 169 F.3d at 600.  Therefore, it appears that the ALJ

27   discounted plaintiff's credibility simply because he was physically and mentally

28   capable of performing some daily activities, which was an insufficient reason.

1   To the extent that the ALJ's reason for finding plaintiff less credible was

2 that plaintiff's daily activities were not consistent with his alleged symptoms, that

3 reason is also not supported by the evidence. *See Tommasetti*, 533 F.3d at 1039

4 (inconsistency between a claimant's alleged symptoms and her daily activities may

5 be a clear and convincing reason to find a claimant less credible); *Bunnell*, 947

6 F.2d at 346-47 (same).  In his Exertion Questionnaire, plaintiff reported that his

7 daily activities primarily consisted of household chores, including taking care of

8 his dog.  AR at 295.  Plaintiff did not have a problem walking his dog, but each

9 walk was only about a quarter mile.  *Id*.  Plaintiff limited how much he lifted to

10 only household items and groceries.  *Id.* at 296.  Plaintiff reported that he shopped

11 at the grocery store about once a week, washed his own clothes, and did normal

12 chores.  *Id.*  At the hearing, plaintiff testified that he cleans his house but that it is

13 not large and he required time to rest between rooms.  *Id*. at 83.  Plaintiff testified

14 that the muscles in his neck area would tighten up with activities involving the

15 upper body, including lifting, carrying, and walking for a prolonged period of

16 time.  AR at 73-74.  Plaintiff further testified that he can probably sit for about

17 two hours but would need to rest in order take to take pressure off his neck.  *Id.* at

18 76.  Thus, plaintiff's alleged symptoms were not inconsistent with his reported

19 daily activities.

20   Accordingly, plaintiff's daily activities were not a sufficient reason for

21 discounting his credibility.  But the ALJ cited one clear and convincing reason –

22 plaintiff's conservative treatment.  Whether this one reason was by itself sufficient

23 in light of the ALJ's misinterpretation of plaintiff's daily activities is a close

24 question.  *Cf. Batson*, 359 F.3d at 1195-97 (ALJ erred in relying on one of several

25 reasons in support of an adverse credibility determination, but such error was

26 harmless because the ALJ's remaining reasons and ultimate credibility

27 determination were adequately supported by substantial evidence in the record).

28 The court need not decide this, given that the court has found the ALJ erred in

1    rejecting the postural limitations opined by Dr. Styner and others.  On remand, the

2    ALJ should reconsider plaintiff's credibility in light of all of the evidence in the

3    record.

4                                              **V.**

5                            **REMAND IS APPROPRIATE**

6           The decision whether to remand for further proceedings or reverse and

7    award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

8    888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

9    discretion to direct an immediate award of benefits where: "(1) the record has been

10   fully developed and further administrative proceedings would serve no useful

11   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

12   evidence, whether claimant testimony or medical opinions; and (3) if the

13   improperly discredited evidence were credited as true, the ALJ would be required

14   to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020

15   (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

16   instructions to calculate and award benefits).  But where there are outstanding

17   issues that must be resolved before a determination can be made, or it is not clear

18   from the record that the ALJ would be required to find a plaintiff disabled if all the

19   evidence were properly evaluated, remand for further proceedings is appropriate.

20   *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

21   211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for

22   further proceedings when, even though all conditions of the credit-as-true rule are

23   satisfied, an evaluation of the record as a whole creates serious doubt that a

24   claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

25          Here, remand is required because the ALJ erred in failing to properly

26   evaluate Dr. Styner's opinion about postural limitations but it is not clear that,

27   even with those postural limitations, the ALJ would be required to find plaintiff

28   disabled.  *See, e.g.*, AR at 90-92 (vocational expert did not testify regarding RFC

hypothetical with added postural limitations).  On remand, the ALJ shall reconsider the opinion provided by Dr. Styner concerning postural limitations, as well as Dr. Weinstein's and Dr. Mashoof's opinions concerning postural limitations and Dr. Wood's opinion, and either credit their opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them.  The ALJ shall also reconsider plaintiff's credibility in light of all the evidence in the record.  The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: November 6, 2014

_____
SHERI PYM
United States Magistrate Judge